**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE ) | |
| ) | |
| EKKEHARD T. WILKE, ) | No. 10 B 04976 |
| ) | |
| Debtor. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Following consecutive evidentiary hearings held on (1) the Motion of Ekkehard T. Wilke ("Debtor") under 11 U.S.C. § 362(k) for sanctions for the willful violation of the automatic stay; and (2) the Motion of South Commons Phase I Condominium Association ("Association") under 11 U.S.C. § 362(d) to modify and annul the automatic stay, this Court now makes and enters these Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**A.  Transfers of Property**

1.  The Debtor filed his voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on February 9, 2010 ("Petition Date").

2.  The Debtor is currently the record owner of the residential real property commonly known as 2901 South Michigan Avenue, Units 903-904, Chicago, Illinois 60616 ("Property"). The Property consists of two combined condominium units located in the South Commons Phase I Condominiums.

3.  As is customary for condominiums, all unit owners in the South Commons Phase I Condominiums are subject to monthly condominium assessments. These assessments are to be paid by the unit owner to the Association on a monthly basis.

4. The Debtor, an individual, first obtained title to the Property by warranty deed dated March 21, 2005, and recorded the deed with the Cook County Recorder of Deeds on April 12, 2005 ("April 12, 2005 Deed"). The Debtor received record title to the Property from Charlise Williams ("Williams"). Prior to the April 12, 2005 Deed, Williams had been the record owner of the property since she purchased it in 1999.

5. Williams is not related to the Debtor but knew her from his position as Associate Provost at East-West University in Chicago, Illinois.

6. Prior to execution of the April 12, 2005 Deed, the Debtor granted a first mortgage on the Property to Argent Mortgage Company, LLC ("Argent") to secure a $192,000.00 promissory note executed by the Debtor in favor of Argent ("First Mortgage").

7. Three days later, on the same day Williams executed the April 12, 2005 Deed, the Debtor granted a second mortgage on the Property to Argent to secure another promissory note in favor of Argent in the amount of $48,000.00 ("Second Mortgage"). The First Mortgage and Second Mortgage were also recorded on April 12, 2005.

8. Exactly one month after recording the April 12, 2005 Deed, the First Mortgage and the Second Mortgage, the Debtor transferred the Property back to Williams by quitclaim deed for no consideration ("May 12, 2005 Deed"). The May 12, 2005 Deed was executed on March 21, 2005, the same day as the April 12, 2005 Deed was executed by the Debtor and Williams.

9. As of May 12, 2005, Williams was again the record owner of the Property.

10. After recording of the May 12, 2005 Deed, the Association filed its first action in the Circuit Court of Cook County against Williams to evict her from the Property for failure to pay her assessments.

11. In spring of 2009, the state court judge entered an order requiring Williams to pay use and occupancy payments to the Association or be fully current by September 1, 2009. Williams did neither and, on September 11, 2009, the state court transferred the case to the municipal division to be set for trial. On October 6, 2009, the state court assigned the eviction proceedings to a municipal division judge and set the matter for pre-trial status.

12. On February 1, 2010, Williams transferred record title of the Property again to the Debtor for no consideration ("February 1, 2010 Deed"). The transfer of the February 1, 2010 Deed occurred only ten days before trial in the state court eviction proceedings and only eight days before the Debtor filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code.

## B. Multiple Bankruptcy Filings Affecting Property

13. Williams first filed bankruptcy under Chapter 13 of the Bankruptcy Code on January 2003, and the case was dismissed in September 2004 when she failed to make payments to the Chapter 13 Trustee. During her first case, the Property was listed in Williams' Bankruptcy Schedules (Schedule A), and the automatic stay was modified as to the mortgage creditor on the Property.

14. Five days after dismissal of the first case, on October 5, 2004, Williams filed her second Chapter 13 bankruptcy case. Again, the Property was listed on Schedule A of her Bankruptcy Schedules and the mortgage creditor on the Property moved to modify the stay. Eventually, Williams moved to voluntarily dismiss her second bankruptcy which was granted on March 22, 2005. The

dismissal occurred one day after Williams executed the April 12, 2005 Deed transferring the Property to the Debtor.

15. Williams filed her third bankruptcy case on August 3, 2006, and the Property was again listed on Schedule A. The Association moved to modify the automatic stay as to the Property, and that motion was granted. Again, the Chapter 13 Trustee moved to dismiss the case for failure to make plan payments, and the case was dismissed on March 12, 2007.

16. After dismissal of the third bankruptcy case, the Association re-filed its eviction actions against Williams. Shortly thereafter, and only four weeks after her third bankruptcy case was dismissed, Williams filed her fourth Chapter 13 bankruptcy case. During the fourth bankruptcy case, the Association moved for relief from stay and to dismiss the case with a 180-day bar. The Association's motion for relief from stay was denied on the condition that Williams make payments to the Association. Williams failed to make the required payments to the Association and the stay was lifted. The fourth bankruptcy case was dismissed in September 2008 on the Chapter 13 Trustee's motion to dismiss for failure to make plan payments.

17. Upon dismissal of the fourth bankruptcy case, the Association recommenced its actions to evict Williams from the Property. On the same date as the eviction proceedings were assigned to a municipal division judge and the matter set for pre-trial status, Williams filed her fifth bankruptcy proceeding and listed the Property for the fifth time on her Bankruptcy Schedules and Statement of Financial Affairs.

18. The Association moved to dismiss the fifth bankruptcy case and bar Williams from re-filing under any chapter of the Bankruptcy Code. After an evidentiary hearing on December 4, 2009, Bankruptcy Judge Goldgar found that the fifth bankruptcy case was filed in bad faith.

Specifically, Judge Goldgar ruled that none of Williams' five bankruptcy cases were a good faith effort to repay creditors. The Bankruptcy Court dismissed Williams' fifth bankruptcy case and barred her from filing bankruptcy under any chapter of the Bankruptcy Code for 180-days. The 180-day bar is set to expire on June 2, 2010.

### C. State Court Eviction Proceedings

19. The Association restarted the eviction actions against Williams, and a trial date was set for February 11, 2010 at 2:00 p.m. On February 11, 2010, prior to 2:00 p.m., the Association's attorney received a motion to dismiss the state court eviction proceedings by facsimile from Williams' attorney. The motion to dismiss stated that the Debtor was the actual owner of the Property. It further stated that because Williams was not the owner of the Property and that the Debtor filed bankruptcy two days earlier, on February 9, 2010, the Association could not proceed to trial.

20. Upon receipt of the motion to dismiss, the Association's counsel conducted a title search on the Cook County Recorder of Deeds' website. The Association's search only showed the May 12, 2005 Deed transferring the Property from the Debtor to Williams and that Williams was the record owner. No deed of the property from Williams back to Debtor was then found of record. As such, the Association's counsel proceeded to the state court for trial.

21. Before commencement of the trial, Williams' counsel argued that the Debtor was the title holder of the Property. The state court judge, Judge Garber, invited counsel for the Association and Williams back to his chambers to conduct a title search which again showed Williams to be the record owner of the Property, and again no deed of the property back to Debtor was found of record.

22. Judge Garber then offered Williams' counsel another opportunity to present evidence that the Debtor was record holder of the Property. Williams' counsel was not able to produce a copy of the alleged deed of title back to Debtor, and the Association's eviction actions proceeded to trial. At trial, the Court ruled in favor of the Association, entered orders for possession for each of the Property's condominium units and found Williams liable to the Association in the aggregate amount of $44,610.26. The state court judge also granted the Association leave to file a petition for attorney's fees and court costs in the future. Under Illinois law, enforcement of both orders for possession was stayed until April 11, 2010.

23. On April 8, 2010, the Debtor's state court counsel, Andrew Spiegel ("Spiegel"), filed an emergency motion to intervene in the state court proceeding. The emergency motion stated that the Debtor was the owner of the Property pursuant to the April 21, 2005 Deed and the mortgages granted to Argent. The emergency motion also stated that the Debtor had filed for bankruptcy protection. However, the emergency motion listed an incorrect bankruptcy petition date of April 11, 2010 and an incorrect bankruptcy case number. Judge Garber denied the emergency motion to intervene and found that the state court did not have jurisdiction over the Debtor.

24. Sometime on or after April 11, 2010, the Association placed the orders for possession with the Cook County Sheriff ("Sheriff") to evict Williams from the Property.

**D. Failure to Provide Notice of the Debtor's Bankruptcy to the Association**

25. The Debtor filed the instant bankruptcy case on February 9, 2010, just eight days after receiving record title, and listed the Property on his Schedule A. Neither the Debtor's Bankruptcy Schedules nor his Chapter 13 plan listed the Association as a creditor. The Association was not on

the Debtor's creditor matrix or the Clerk of the Bankruptcy Court's notice list, though the Property was listed on Debtor's Schedule A.

26. On March 23, 2010, the Debtor filed an Amended Schedule D of Secured Creditors and listed the Association. Again, the Association did not receive a copy of the Amended Bankruptcy Schedules nor any notice of the bankruptcy through the Court's automatic notice system or a separate notice of filing.

27. On April 26, 2010, Spiegel, on behalf of the Debtor, filed an emergency motion to stay proceedings and for sanctions to be heard on April 28, 2010 in the Bankruptcy Court. This emergency motion was hand-delivered by Spiegel to the Association's counsel. No exhibits were attached to the emergency motion.

28. Prior to proceeding to trial on the instant motions, the Bankruptcy Court entered an order, which was placed with the Sheriff, staying the orders for possession until further order of the Court.

### E. Failure to Fund Chapter 13 Plan

29. Since the Petition Date, the Debtor has not made a single payment to the Chapter 13 Trustee and is currently $5,580.00 in arrears in plan payments. Additionally, the Debtor stated that Williams was the party to make his mortgage payments and his condominium assessments and that he was relying on Williams to make his Chapter 13 Plan payments.

30. The mortgage creditor has objected to the Debtor's Chapter 13 plan for not properly identifying the $73,394.13 owed in pre-petition mortgage arrears, and the Chapter 13 Trustee has filed three separate motions to dismiss.

31. The Association was not listed as a creditor in the Debtor's Chapter 13 Plan.

32. The Debtor has not made any payments to creditors, filed an amended plan or provided any evidence that he will be able to submit a confirmable Amended Chapter 13 plan. When the latest Motion of Chapter 13 Trustee to Dismiss Debtor's Bankruptcy Case came on for hearing on May 19, 2010, counsel for Debtor announced that Debtor has no objection to dismissal. Rather than allow the possibility that dismissal might moot these proceeding brought by the Association, as Debtor appears to seek, the Motion to Dismiss was continued.

33. Additional fact statements contained in the Conclusions of Law will stand as additional Findings of Fact, and conclusions of law contained in the Findings of Fact will stand as additional Conclusions of Law.

## CONCLUSIONS OF LAW

**A.  Jurisdiction**

1. This Court has jurisdiction over these contested motions pursuant to 28 U.S.C. §§ 1334(a)-(b) and 28 U.S.C. §§ 157(a)-(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

**B.  Sanctions Against the Association Would be
     Warranted in this Case if the Stay is not Annulled**

2. Section 362(a)(3) of the Bankruptcy Code states that "a petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of – any act to obtain possession of property of the estate or . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay takes effect when a petition is filed under 11 U.S.C. § 301. In re Gossett, 369 B.R. 361, 374 (Bankr. N.D. Ill. 2007).

3.  An individual injured by a willful violation of the stay can move to recover damages incurred from the violating party. See 11 U.S.C. § 362(k). A debtor alleging a violation of the stay has the burden of proving the creditor's violation was willful. Thompson v. Gen. Motors Acceptance Corp., 566 F.3d. 699, 708 (7th Cir. 2009). "A stay violation is willful when the creditor: (1) has actual notice of the bankruptcy filing; and (2) commits a deliberate act when it violated the automatic stay." In re Thompson, No. 08-02560, 2010 WL 1063578, at *2 (Bankr. N.D. Ill. March 19, 2010)(citing In re Will, 303 B.R. 357, 363-64 (Bankr. N.D. Ill. 2003)).

4.  Notice of the bankruptcy filing can be either through formal notice or otherwise. In re Fridge. 239 B.R. 182, 190 (Bankr. N.D. Ill. 1999). "If a creditor violates the automatic stay provision without knowledge that an active bankruptcy case is pending, the violation is technical" not willful. Gossett, 369 B.R. 361, 375 (Bankr. N.D. Ill. 2007).

5.  In order for a debtor to recover actual damages for a willful violation of the stay, "a debtor must show the amount of damages with reasonable certainty." Thompson, 2010 WL at *7. "A damage award cannot be based on mere speculation, guess, or conjecture." Id. (citing In re Sumpter, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994).

6.  In this case, two stay violations occurred neither of which can rise to the level of a sanctionable offense. The first technical stay violation occurred two days after the Petition Date and ten days after the Property was transferred to the Debtor, when the Association proceeded to trial and obtained orders for possession against Williams. However, these actions were not willful. Significant evidence was presented to the Court by the Association that upon receipt of the allegations that the Property had been transferred by Williams to the Debtor, the Association made a vigorous effort to investigate whether the Debtor actually held title to the Property.

7. Prior to trial, when the Association's counsel received Williams' motion to dismiss alleging the Debtor held title to the Property, the Association's counsel immediately conducted a title search on the Cook County Recorder of Deeds' website. Only after the Association's counsel was satisfied that Williams was the record holder of the Property did she proceed to state court for trial.

8. Before trial, Judge Garber also took affirmative steps to determine whether the Property was transferred to the Debtor. He brought counsel for the Association and Williams back to his chambers to conduct another title search. Again, the Cook County Recorder of Deeds' website showed that Williams remained the record owner. The evidence presented found that Judge Garber offered Williams' counsel another opportunity to produce credible evidence, such as a copy of a deed transferring title, that Williams had transferred title to the Property to the Debtor, but no such evidence was presented.

9. It was only after the foregoing due diligence of the Association's counsel and Judge Garber did the state court eviction cases proceed to trial and the orders for possession were entered against Williams on February 11, 2010. Under the foregoing circumstances, the Association and its counsel did not have actual notice that the Debtor's bankruptcy effected an automatic statutory stay relating to the subject property, and therefore their actions to continue with the state court eviction trials and obtain the orders for possession cannot be deemed to be willful as required under 11 U.S.C. §362(k).

10. Moreover, it was uncontroverted that the Association was not listed as a creditor on the Debtor's Bankruptcy Schedules or provided notice of the bankruptcy filing. Additionally, when the Association was added to the Debtor's Bankruptcy Schedules on March 23, 2010, the Debtor's

Amended Bankruptcy Schedules were not served on the Association, and the Association did not receive any other notice of the bankruptcy filing.

11. When the Debtor's state court counsel served an emergency motion to intervene on the Association's counsel, the Association should have taken affirmative steps to determine whether the Property had been transferred to the Debtor. The Association did not conduct a further investigation as to the Property's record owner at that time and allowed the orders for possession to be placed with the Sheriff to evict Williams.

12. It was at this point that the Association had notice of the Debtor's bankruptcy filing and the transfer of the Property to the Debtor. The Association's deliberate act in placing the orders for possession with the Sheriff was a willful violation of the automatic stay.

13. However, no sanctions or damages are recoverable by the Debtor from the Association's willful violation of the stay. It is the Debtor's burden to demonstrate the amount of damages with reasonable certainty and, here, the Debtor did not present any evidence of damage. The Sheriff never evicted Williams from the Property, Williams was not paying her alleged rental payments to the Debtor and the Debtor did not identify any attorney's fees or costs associated with the Association's violation of the automatic stay.

14. A symbolic $1.00 award of damages might be awarded to the Debtor under such circumstances. However, as discussed below, the stay will be annulled in this case, so no violation could have occurred and therefore the Debtor's motion for sanctions is entirely denied.

C.  **Annulment of the Automatic Stay is Appropriate in this Case**

15.   Pursuant to Section 362(d) of the Bankruptcy Code, the Bankruptcy Court has the authority and discretion to annul the automatic stay. Annulment of the automatic stay grants retroactive relief to the movant, allowing the creditor for whose benefit the stay is annulled to proceed as if the bankruptcy had never been filed and the automatic stay and never been imposed. In re Albany Partn., Ltd., 749 F.2d 670, 675 (11th Cir. 1984).

16.   It is appropriate to annul the automatic stay retroactively when: (1) a creditor did not have actual knowledge of the applicability of the automatic stay at the time the creditor violated the stay; and (2) the creditor would be unfairly prejudiced if the debtor court raise the stay as a defense to the act in which the creditor seeks possession or control over the property. Gossett, 369 B.R. at 376.

17.   Unfair prejudice arises where the creditor had a valid legal basis for lifting the automatic stay at the time that the action or proceeding sought to be stayed occurred. In re Lupima, 167 B.R. 522, 526 (Bankr. N.D.Ill. 1994). Lack of good faith also supports the retroactive annulment of the automatic stay. Albany Partn., 749 F.2d at 675; In re Sanders, 198 B.R. 326, 330 (Bankr. S.D. Cal. 1996).

18.   "An order annulling the stay [operates] retroactively to the date of the filing of the petition . . . , and thus [validates] actions taken by the party at a time when he may have been unaware of the existence of the stay." Gossett, 369 B.R. at 376 (citing In re Behr, 78 B.R. 447, 449 (Bankr. D.S.C. 1987).

19. Unless the issue before the Court is the Debtor's equity in property, the Debtor carries the burden of proof in proceeding on a motion to modify the automatic stay to demonstrate that the stay should not be modified. In re Saulk Steel Co., Inc., 133 B.R. 431, 436 (Bankr. N.D. Ill. 1991).

20. In this case, the actions to be validated are the entry of the orders for possession and placing the orders for possession with the Sheriff. As this Court has already entered an Order staying the Sheriff from evicting Williams until further order of court, the only action at issue is the entry of the orders for possession.

21. At the time of the entry of the orders for possession, on February 11, 2010, the Association did not have actual notice of the bankruptcy filing and took affirmative steps to determine whether the Debtor was the record owner of the Property. As such, for the Association's actions to be annulled, the Debtor must show cause did not exist for lifting the stay as of February 11, 2010.

22. The Property has been on a seven-year journey through the bankruptcy court and state court systems. The Association has spent nearly four years trying to evict Williams from the Property. Every time the Association is at the brink of obtaining possession of the Property, Williams uses the legal system to foil the Association's efforts at gaining possession of the Property.

23. The facts in this case show that the Debtor has been a supporting member of Williams' tag-team to keep the Property away from the Association. The Debtor contends that the transfers back and forth of the Property between Williams and him in 2005 were an estate planning tactic. However, on this record it is found that the Debtor has participated in an attempt to hinder and delay the Association.

24. The end result of the Debtor's transfers in 2005 was that he was in debt to Argent for $240,000.00 with Williams holding title to the Property for no consideration. Moreover, the April 12, 2005 Deed and May 12, 2005 Deed were executed on March 21, 2005. That was only one day prior to Williams' voluntary dismissal of her second bankruptcy case and shortly after the mortgage creditor had obtained relief from the automatic stay.

25. The circumstances surrounding the 2010 Deed and the instant Chapter 13 case appear no more legitimate based on ordinary commercial motives. After dismissal of Williams' fifth bankruptcy case, she was barred from re-filing for 180-days, and the Association had restarted its efforts to evict her. Then, only ten days prior to the Association's trial to evict her, Williams transferred the Property to the Debtor for no consideration. Rather than attempt to pay the Association or any other lien holders on the Property, the Debtor, two days prior to the eviction trial, filed for Chapter 13 relief.

26. While receiving the benefits of the automatic stay, the Debtor has made no efforts to reorganize or provide his creditors with adequate protection of payments. His Chapter 13 Plan is deficient on its face as the Association, which is owed over $100,000, is not provided for in the plan, and the Property's mortgagee has filed an objection to the plan for not properly identifying the $73,394.13 owed in pre-petition mortgage arrears. Additionally, the Debtor's case has been pending for more than three months and no payments have been made by the Debtor. Ironically, the Debtor's purported Chapter 13 Plan relies on Williams, an individual who has filed Chapter 13 on five separate occasions, to fund his Chapter 13 plan payments.

27. The Debtor provided no evidence that any payments have been made or will be made shortly. The Debtor also could not provide any substantive evidence as to potential modifications

in his plan that would allow him to submit a feasible Chapter 13 Plan. Indeed, Debtor's counsel has invited dismissal of this case on pending Motion of Chapter 13 Trustee. As such, this Court finds that cause exists for the modification and annulment of the automatic stay as to the Association. This Court will enter an Order on May 20, 2010, effective immediately, permitting the Association to enforce the orders for possession and evict Williams from the Property.

## CONCLUSION

The Debtor has failed to demonstrate that it suffered any actual damages from the Associations incidental or willful violations of the automatic stay and the Debtor's motion for sanctions must be denied. Cause has been shown by the Association to grant its motion for annulment of the automatic stay with respect to the Property. An Order denying the Debtor's request for sanctions and granting the Association's request for annulment of the automatic stay will be separately entered.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 20th day of May, 2010.