IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re | Chapter 13 Case |
|---|---|
| EKKEHARD T. WILKE, | Case No. 10 B 04976 |
| Debtor. | Hon. Jack Schmetterer |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON MOTION TO MODIFY STAY *IN REM*

Following an evidentiary hearing held on the Motion of South Commons Phase I Condominium Association (the "Association") under 11 U.S.C. § 362(d)(4) to modify the automatic stay *in rem* as to certain real property for a period of two (2) years, an order was entered on May 20, 2010, granting the relief requested for reasons stated from the bench then and which are amplified in these Findings of Fact and Conclusions of Law which are now made and will be entered:

### I. FINDINGS OF FACT

A.   **Transfers of Title to the Property**

The debtor, Ekkehard Wilke, filed his voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on February 9, 2010 (the "Petition Date"). Wilke is currently the record owner of the residential real property commonly known as 2901 South Michigan Avenue, Units 903-904, Chicago, Illinois 60616 (the "Property"). The Property consists of two combined condominium units located in the South Commons Phase I Condominiums. All unit owners in the South Commons Phase I Condominiums are subject to

monthly condominium assessments. These assessments are to be paid by the unit owner to the Association on a monthly basis.

Wilke, an individual, first obtained title to the Property by warranty deed dated March 21, 2005, and recorded with the Cook County Recorder of Deeds on April 12, 2005 (the "April 12, 2005 Deed"). Wilke thereby received record title to the Property from Charlise Williams ("Williams"). Prior to the April 12, 2005 Deed, Williams had been the record owner of the Property since she purchased it in 1999. Williams is not related to Wilke, but Wilke knew her from his position as Associate Provost at East-West University in Chicago, Illinois.

Prior to execution of the April 12, 2005 Deed to Wilke, and in contemplation of it, Wilke granted a first mortgage on the Property to Argent Mortgage Company, LLC ("Argent") to secure a $192,000.00 promissory note executed by him in favor of Argent (the "First Mortgage"). Three days later, on the same day that Williams executed the April 12, 2005 Deed, Wilke granted a second mortgage on the Property to Argent to secure another promissory note in favor of Argent in the amount of $48,000.00 (the "Second Mortgage"). The First Mortgage and Second Mortgage were both recorded on April 12, 2005.

However, Wilke took title to the Property in 2005 only so long as necessary for his credit history to be used to obtain the First Mortgage and Second Mortgage. Just one month after recording the April 12, 2005 Deed, the First Mortgage, and the Second Mortgage, Wilke transferred the Property back to Williams by quitclaim deed for no consideration ("May 12, 2005 Deed"). As a result of that deed, Williams was again the record title owner of the Property as of May 12, 2005.

In 2006, after recording of the May 12, 2005 Deed, the Association filed its first action in the Circuit Court of Cook County against Williams to evict her from the Property for failure to pay her assessments. In Spring 2009, the state court judge entered an order requiring Williams to pay use and occupancy payments to the Association or be fully current by September 1, 2009. Williams did neither and, on September 11, 2009, the state court transferred the case to the municipal division to be set for trial. On October 6, 2009, the state court assigned the eviction proceedings to a municipal division judge and set the matter for pre-trial status. The trial on the eviction proceedings was scheduled before Judge Garber on February 11, 2010.

On February 1, 2010, Williams transferred record title in the Property back to Wilke for no consideration (the "February 1, 2010 Deed"). The transfer of the February 1, 2010 Deed occurred only ten days before trial in the state court eviction proceedings and only eight days before Wilke filed this case for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Williams's intent in making the transfer and Wilke's in accepting it was to enable Wilke to assert the automatic stay in his forthcoming bankruptcy case in order to protect Williams in her continued possession of the property. This ploy was executed because, as shown below, she could not obtain the bankruptcy stay for herself as a result of her own abuse through multiple bankruptcy filings.

**B.     Multiple Bankruptcy Filings by Williams Affecting the Property**

Williams first filed bankruptcy under Chapter 13 of the Bankruptcy Code in January 2003, and that case was dismissed in September 2004 when she failed to make payments to the Chapter 13 Trustee. During her first case, the Property was listed in Williams's Bankruptcy

Schedules (Schedule A), and the automatic stay was modified as to the mortgage creditor on the Property.

Five days after dismissal of that first case, on October 5, 2004, Williams filed her second Chapter 13 bankruptcy case. Again, the Property was listed on Schedule A of her Bankruptcy Schedules and the mortgage creditor on the Property moved to modify the stay. Eventually, Williams moved to dismiss her second bankruptcy voluntarily. That motion was granted on March 22, 2005. The dismissal occurred one day after Williams executed the April 12, 2005 Deed transferring the Property to Wilke.

Williams filed her third bankruptcy case on August 3, 2006, and the Property was again listed on her Schedule A. The Association moved to modify the automatic stay as to the Property, and that motion was granted. Again, the Chapter 13 Trustee moved to dismiss the case for failure to make plan payments, and the case was dismissed on March 12, 2007.

After dismissal of the third bankruptcy case, the Association re-filed its eviction actions against Williams. Shortly thereafter, and only four weeks after her third bankruptcy case was dismissed, Williams filed her fourth Chapter 13 bankruptcy case. During the fourth bankruptcy case, the Association moved for relief from stay and to dismiss the case with a 180-day bar. The Association's motion for relief from stay was denied on the condition that Williams make payments to the Association. Williams failed to make the required payments to the Association and therefore the stay was lifted. The fourth bankruptcy case was dismissed in September 2008 on the Chapter 13 Trustee's motion to dismiss for failure to make plan payments.

Upon dismissal of the fourth bankruptcy case, the Association recommenced its actions to evict Williams from the Property. On the same date as the eviction proceedings were assigned

to a municipal division judge and the matter set for pre-trial status, Williams filed her fifth bankruptcy proceeding and listed the Property for the fifth time on her Bankruptcy Schedules and Statement of Financial Affairs.

The Association moved to dismiss the fifth bankruptcy case and bar Williams from refiling under any chapter of the Bankruptcy Code. After an evidentiary hearing on December 4, 2009, Bankruptcy Judge Goldgar found that the fifth bankruptcy case was filed in bad faith. Specifically, Judge Goldgar ruled that none of Williams's five bankruptcy cases were good faith efforts to repay creditors. The Bankruptcy Judge dismissed Williams's fifth bankruptcy case and barred her from filing bankruptcy under any chapter of the Bankruptcy Code for 180 days. That 180-day bar was scheduled to expire on June 2, 2010. Because of that bar, Williams could not refile in time to protect herself from the state court trial scheduled for February 11, 2010.

### C.    State Court Eviction Proceedings

After dismissal of Williams's fifth bankruptcy case, the Association restarted the eviction actions against her, and a trial date was set for February 11, 2010 at 2:00 p.m. On February 11, 2010, prior to 2:00 p.m., the Association's attorney received a motion to dismiss the state court eviction proceedings by facsimile from Williams's attorney. The motion to dismiss stated that Wilke was the actual owner of the Property. It further stated that because Williams was not the owner of the Property and that Wilke filed bankruptcy two days earlier, on February 9, 2010, the Association could not proceed to trial.

Upon receipt of the motion to dismiss, and later in the presence of the state court judge and Williams's counsel, the Association, through its counsel, conducted multiple title searches to determine record ownership of the Property. None of these searches revealed the alleged deed

transferring title to Wilke. Judge Garber, who presided over the eviction actions, then offered Williams's counsel an opportunity to present evidence of the title transfer, but Williams's counsel was not able to produce even a copy of the alleged deed transferring title back to Wilke. The Association's eviction actions then proceeded to trial.

At trial, Judge Garber ruled in favor of the Association, entered orders for possession for each of the Property's condominium units and found Williams liable to the Association in the aggregate amount of $44,610.26. The state court judge also granted the Association leave to file a petition for attorney's fees and court costs in the future. Under Illinois law, enforcement of both orders for possession was stayed until April 11, 2010.

On April 8, 2010, Wilke's state court counsel, Andrew Spiegel ("Spiegel"), filed an emergency motion to intervene in the state court proceeding. The emergency motion stated that Wilke was owner of the Property pursuant to the April 21, 2005 Deed and the mortgages granted to Argent. The emergency motion also stated that Wilke had filed for bankruptcy protection. However, the emergency motion listed an incorrect petition date of April 11, 2010, and an incorrect bankruptcy case number. Judge Garber denied the emergency motion to intervene and found that the state court did not have jurisdiction over Wilke.

Sometime on or after April 11, 2010, the Association placed the orders for possession with the Cook County Sheriff (the "Sheriff") to evict Williams from the Property.

### D.    Wilke's Current Bankruptcy Case

Wilke filed the instant bankruptcy case on February 9, 2010, just eight days after receiving a deed giving him record title to the Property. Although Wilke listed the Property on his Schedule A, he did not disclose the Association as a creditor on his Bankruptcy Schedules or

his Chapter 13 plan, and the Association was not on the Debtor's creditor matrix or the Clerk of Bankruptcy Court's notice list.

On March 23, 2010, Wilke filed an Amended Schedule D of Secured Creditors and listed the Association. The Association was not sent and did not receive a copy of the Amended Bankruptcy Schedules or any notice of the bankruptcy through the Court's notice system or a separate notice of filing.

On April 26, 2010, Spiegel, on behalf of Wilke, filed an emergency motion to stay the state court eviction proceedings and for sanctions for an asserted violation of the bankruptcy stay to be heard on April 28, 2010, in the Bankruptcy Court. This emergency motion was hand-delivered by Spiegel to the Association's counsel. No exhibits were attached to the emergency motion.

On May 3, 2010, the Association filed a motion to modify and annul the automatic stay. The Debtor's emergency motion for sanctions and the Association's motion to annul the automatic stay were set for evidentiary hearing on May 11, 2010 (the "Annulment Hearing"). The Association's request for relief under 11 U.S.C. § 362(d)(4) was bifurcated for evidentiary hearing at a later date. Prior to proceeding to the Annulment Hearing, an interim order was entered that stayed the state court orders for possession until further order in this bankruptcy case. That order was placed immediately with the Sheriff.

At trial on May 11, 2010, an oral ruling was made from the bench, amplified by Findings of Fact and Conclusions of Law made and entered on May 20, 2010. Pursuant thereto, the automatic stay was annulled as to the Association and Wilke's request for sanctions was denied. It was then found that Wilke has been a supporting member of Williams's tag team to keep the

Property away from the Association, and that he has participated in an attempt to delay and hinder the Association.

### E. Failure to Fund Chapter 13 Plan

Since the Petition Date, Wilke has not made a single payment to the Chapter 13 Trustee and is currently $5,580.00 in arrears in plan payments. Wilke testified that Williams agreed to pay his mortgage payments and condominium assessments, and that he was relying on Williams to make his Chapter 13 Plan payments.

The mortgage creditor has objected to Wilke's Chapter 13 plan for not scheduling the $73,394.13 owed in pre-petition mortgage arrears, and the Chapter 13 Trustee has filed three separate motions to dismiss. Wilke did not list the Association as a creditor in his Chapter 13 Plan, and he has not made any payments to creditors, filed an amended plan, or provided any evidence that he will be able to submit a confirmable Amended Chapter 13 plan.

### F. Hearing on *In Rem* Relief under 11 U.S.C. § 362(d)(4)

An evidentiary hearing on Association's request for relief under 11 U.S.C. § 362(d)(4) was set for May 20, 2010, and was then held and concluded. In connection with that hearing and to remedy any potential due process concerns with regard to any interest Williams might have in the Property, the Association, as required by an order, issued a subpoena for Williams to appear at the evidentiary hearing, filed a motion to join Williams as a necessary party (which was granted prior to trial), and provided Williams with notice of the motion to modify the automatic stay *in rem* for a period of two years. Williams appeared at the evidentiary hearing and was represented by Spiegel.

Evidence admitted at the Annulment Hearing was readmitted as evidence at the evidentiary hearing requesting *in rem* relief under 11 U.S.C. § 362(d)(4).

Fact statements contained in the Conclusions of Law will stand as additional Findings of Fact, and any conclusions of law contained in the Findings of Fact will stand as additional Conclusions of Law.

## II. CONCLUSIONS OF LAW

This Court has jurisdiction over these contested motions pursuant to 28 U.S.C. §§ 1334(a)–(b) and 28 U.S.C. §§ 157(a)–(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

Under the Bankruptcy Code, "a petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or . . . exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay takes effect when a petition is filed under 11 U.S.C. § 301. *In re Gossett*, 369 B.R. 361, 374 (Bankr. N.D. Ill. 2007).

On request of a party in interest and after notice and hearing, the court has the authority to grant relief from the automatic stay by terminating, annulling, modifying or conditioning the automatic stay. 11 U.S.C. § 362(d). The 2005 amendments to the Bankruptcy Code added section 362(d)(4), which provides bankruptcy judges with statutory authority to grant *in rem* relief. *See In re Montalvo*, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009).

*In rem* relief can be granted from the automatic stay as to a secured creditor's interest in real property, such that any and all future bankruptcy filings by any person or entity with an interest in the real property will not operate as an automatic stay protecting the owner and its

successors and assigns for a period of two years after entry of such order. 11 U.S.C. § 362(d)(4); *see also Montalvo*, 416 B.R. at 386; *In re Ness*, 399 B.R. 897, 902 (Bankr. E.D. Cal. 2009); *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009).

"Section 362(d)(4) requires that three elements be established: i) the debtor engaged in a scheme, ii) to delay, hinder and defraud the creditor, and iii) which involved either the transfer of property without the creditor's consent or court approval *or* multiple filings." *Poissant*, 405 B.R. at 273 (emphasis in original). For § 362(d)(4) relief to be effective, the order granting such relief must be recorded "in compliance with applicable State laws governing notices of interests or liens in real property." 11 U.S.C. § 362(d)(4); *see also Ness*, 399 B.R. at 902.

A "scheme," for purposes of § 362(d)(4), "is an intentional artful plot or plan to delay, hinder [and] defraud creditors." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006); *see also* Black's Law Dictionary 1372 (8th ed. 2004) ("An artful plot or plan, usu. to deceive others.").

The Seventh Circuit Court of Appeals defined the term "fraud" in the bankruptcy context as follows:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestion or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all *surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.*

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (internal quotation marks and citation omitted) (emphasis added). Fraud is not limited to misrepresentation, but may encompass "any

deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.*

The bankruptcy stay has enormous importance. It protects honest individuals and businesses in about 1,300,000 cases a year nationwide. It affects creditors in a multiple of that number. It must be respected, it must be enforced, and it must be used properly. It is dealt with properly by filing the case, keeping the case alive, and defending against efforts to violate the automatic stay. It should not be created for use as a device that amounts to trickery such as Wilke participated in. Under the litmus test provided by § 364(d)(4), therefore, it must be concluded that Williams and Wilke engaged in a scheme to hinder, delay, and defraud the Association.

The instant bankruptcy case filed by the Wilke was a sham, a device by Wilke and Williams to use Wilke's right to the bankruptcy stay to keep Williams in the Property and prevent the Association's eviction actions from going forward. Since 2006, when the Association first filed its eviction actions against Williams, she used the Bankruptcy Code's automatic stay on five separate occasions to delay and hinder the Association's efforts. Wilke became involved with this scheme when, prior to executing the February 1, 2010 Deed, Williams had her attorney, Ebony Wilkerson, meet with Wilke to suggest that he demand that Williams transfer record title of the Property back to him. Williams needed Wilke to take title to the Property in order to reimpose the stay against the Association, since she could not re-file bankruptcy and impose the stay herself until June 2, 2010. As a willing member of the tag-team scheme, Wilke accepted the February 1, 2010 Deed and record title to the Property without

paying any consideration for conveyance of title to him. Only eight days later, and two days before the Association's eviction trial, Wilke filed his bankruptcy petition for relief.

Wilke testified that he filed the instant case to reorganize his debts and pay his creditors, but the evidence presented does not support this statement. Wilke has not made any payments to creditors, filed a credible plan, or provided any evidence that he will be able to submit a confirmable Amended Chapter 13 plan. At a recent hearing on the motion of the Chapter 13 Trustee to dismiss (before it was possible to rule on the § 362(d)(4) issues), Wilke's lawyers even invited case dismissal on Trustee's Motions so as to leave bankruptcy before the section 362(d)(4) hearing and thus avoid ruling thereon. Wilke's purpose in obtaining title to the Property and filing this Chapter 13 case was only to further a scheme to reimpose the automatic stay, which Williams was unable to accomplish due to Judge Goldgar's Order barring her from doing so until June 2, 2010. From the evidence presented, it is obvious that Wilke wanted to help Williams remain in the Property without paying assessments to the Association. Wilke's desire to help Williams was his motive for requesting title in the Property back in his name only a few days before the eviction trial and upon Williams's attorney, Ebony Wilkerson, suggesting that he ask Williams to deed back the Property.

The timing of the latest deed and Wilke's bankruptcy filing show that the Williams-Wilke tag-team scheme was designed to hinder and delay the Association's efforts at gaining possession of the Property. Williams transferred the February 1, 2010 Deed to Wilke and Wilke filed for bankruptcy on the eve of trial in Williams's state court eviction actions. These legal maneuvers were blatant attempts to put a stop to the eviction actions and further delay the Association's collection efforts.

Williams and Wilke also sought to mask their scheme in a cloud of deception and misuse of Wilke's bankruptcy case that amounted to a fraud on the Association. Using the Seventh Circuit's definition of fraud, as found in *Cantrell*, 217 F.3d at 893, the filing of this bankruptcy petition and transfer of the Property to Wilke included, but was not limited to, surprise, dissembling, and was an unfair way to cheat the Association.

Surprise was caused by the filing of Williams's motion to dismiss the state court proceeding on the day of the eviction trials. If the Wilke legitimately wanted to take title to the Property, he would have immediately notified the Association of his ownership. Instead, on the day of the Association's trial to evict Williams, Williams's attorney Ebony Wilkerson surprised the Association with the allegation that the Property had been transferred to Wilke, a non-party to the eviction proceedings.

The Williams-Wilke tag team also sought to surprise the Association by filing a bankruptcy case without any notice to the Association. The Association has not been paid its assessments since 2002 and has been pursuing its state court remedies against Williams since 2006. However, Wilke did not properly inform it of the filing of his Chapter 13 Case.

Whatever Wilke's purpose was in deeding the Property to Williams in 2005, that purpose changed when Judge Goldgar barred Williams from filing bankruptcy for 180 days. The only means for Williams to avoid the eviction proceedings on February 11, 2010, was for Wilke to obtain title to the Property in his name so his counsel could rush into court and insist that the automatic stay prevented the eviction trial from proceeding to trial.

Wilke's filing of a bankruptcy case following a sham transfer of title to Wilke was for the purpose of deceiving the Association and the state court judge so as to block a trial on the merits

of a pending lawsuit. It amounts to a gross misuse of the automatic stay and repetition of such conduct must be prevented.

### CONCLUSION

For reasons stated, it is found and held that filing of the Wilke's bankruptcy petition was part of a scheme to delay, hinder and defraud the Association involving the transfer of the Property. Cause existed to justify the order entered on May 20, 2010, to modify the automatic stay *in rem* as to the subject Property for two years under 11 U.S.C. § 362(d)(4), until May 19, 2012.

ENTER:

JACK B. SCHMETTERER
UNITED STATES BANKRUPTCY JUDGE

Dated this _____ day of June, 2010.